**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                                :
WILLIAM ROBERT PILKEY,          :
                                :   Civil Action
            Plaintiff,          :   05-5073 (SRC)
                                :
      v.                        :   **O P I N I O N**
                                :
MONMOUTH COUNTY CORRECTIONAL    :
INSTITUTION et al.,             :
                                :
            Defendants.         :
_____:


**APPEARANCES:**

  WILLIAM ROBERT PILKEY, pro se
  #06633-081
  Federal Prison Camp
  Big Springs, Texas 79720

**STANLEY R. CHESLER, District Judge**


  Plaintiff WILLIAM ROBERT PILKEY (hereinafter "Plaintiff") currently confined at the Federal Prison Camp, Big Springs, Texas, seeks to bring this 42 U.S.C. § 1983 action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Plaintiff submitted his (1) affidavit of indigence and institutional account statement pursuant to 28 U.S.C. § 1915(a) (1998); (2) his complaint

Page -1-

(hereinafter "Complaint")[1]; (3) a memorandum of law (hereinafter "Memorandum"); and (4) various attachments and exhibits.[2] Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), as of the date of this Opinion and accompanying Order, the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

Plaintiff's Complaint alleges that the staff of the Monmouth County Correctional Institution (hereinafter "MCCI") violated Plaintiff's Eighth Amendment rights by: (1) "refus[ing] medication to Plaintiff"; and (2) "housing Plaintiff in a 7' x 12' (approximately) room with 2 other inmates, [hence] forcing Plaintiff to sleep in what they call a boat, that is on the floor." Compl. at 1 ("Issues"). Consequently, Plaintiff "ask[s] the . . .

---

[1] Plaintiff's Complaint is an eighteen page compilation out of which eight pages constitute a diary detailing at length the events of August 20, 2005, and then giving overviews of each day thereafter until August 30, 2005. It appears that Plaintiff was in custody of Defendants for the total of eleven days. See Compl. at 4 ("I arrived [to the MCCI] at approximately 6 p.m. [of August 19, 2005, and was released into MCCI's general population] at approximately 9 a.m." of August 20, 2005), see also id. at 12 ("I left [the MCCI] at 6:57 a.m." of August 31, 2005).

[2] Plaintiff's instant Complaint was received by this Court on October 24, 2005. On November 9, 2005, this Court received four other complaints from Plaintiff. See Pilkey v. Lappin, 05-5314, Pilkey v. Lappin, 05-5417, Pilkey v. Lappin, 05-5418, and Pilkey v. Lappin, 05-5419.

Court to award . . . Plaintiff . . . [e]ight hundred thousand dollars ($800,000.00) for [p]ain and [s]uffering, as well as [c]ruel and [u]nusual [p]unishment under the Eighth Amendment." Compl. at 12.

After carefully examining Plaintiff's Complaint, the Court dismisses the Complaint for failure to state a claim upon which relieve may be granted.

## STANDARD OF REVIEW

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous."  Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.  However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969

F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.  Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: (1) that the alleged conduct was committed by a person acting under color of state law; and (2) as a result, Plaintiff was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).  Since there appears to be no doubt that Defendants' actions were done under color of state law, the Court's analysis is limited solely to the second prong of the inquiry.

**A.   Eighth Amendment Prohibition Against Cruel and Unusual Punishment**

The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement.  The Constitution, however, "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), and prison officials must merely ensure that inmates receive adequate food, clothing, shelter and medical care, plus must "take reasonable measures to guarantee the safety of the inmates."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation," Helling, 509 U.S. at 32 (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)), hence requiring that the deprivation sustained by a prisoner be "extreme deprivations." Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The subjective component requires that the state actor have acted with "deliberate indifference," that is, with a state of mind equivalent to a reckless disregard of a known risk of harm.  See Farmer, 511 U.S. at 835; Wilson, 501 U.S. at 303. In sum, an inmate may satisfy (1) the objective component by showing that he was deprived of "the

minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care and personal safety, Rhodes v. Chapman, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), and (2) the subjective component by demonstrating that prison officials knew of such substandard conditions or treatment and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

**B.   Plaintiff's Conditions of Confinement Claim**

With respect to his conditions of confinement claim, Plaintiff's allegations are limited to a single statement:[3]

> [Upon his release into MCCI's general population on August 20, 2005, Plaintiff] was sent to the 3rd floor room 309. . . . [Plaintiff] was shocked to see that it was a two man cell[,] and [Plaintiff] was the third man. The man on the bottom [bank] told [Plaintiff] that [Plaintiff] had to sleep in the "boat." The cell was approximately 7' x 12' with two small tables with . . . swing[-]out seat[s], a commode and a sink. When the boat is on the floor[,] you have approximately 8 to 10 inches to walk by the bed, approximately 10" from the commode to the "boat." When a man used the bathroom or urinated[,] the splashes went where - of course[,] on the "boat." The same when a man washed his hands, water splashed on the "boat," [Plaintiff's] bed.

Compl. at 5.

---

[3] There are no other entries with respect to the challenged conditions of confinement, and Plaintiff's Complaint is silent as to whether the conditions at issue changed during Plaintiff's stay at the MCCI. Therefore, the Court presumes that the conditions at issue remained the same during the entire period of eleven days.

The Court reads Plaintiff's allegation as a claim that MCCI's practice of housing three detainees in cells intended and designed for two inmates (hereinafter "triple-celling")[4] was a violation of the Eighth Amendment.

Plaintiff errs. A non-discriminatory practice of short-term triple-celling does not amount to cruel and unusual punishment. See North v. White, 152 Fed. Appx. 111 (3d Cir. 2005)(finding no Eighth Amendment violation where, due to a temporary influx of inmates, the facility resorted to triple-celling of one-third of inmates for a month, since the facility was otherwise well maintained; and ventilation, light, sanitation and food met applicable minimal standards); Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005) (conducting a nearly-identical inquiry with respect to pre-trial detainees under the Due Process Clause and finding that *two-to-seven-month* of triple-celling in a cell *designed for one* did not constitute a violation, and relying on Bell v. Wolfish, 441 U.S. 520 (1979), the case where no violation was found with respect to 30-to-60-days confinement of two inmates in a cell designed for one); see also Brookins v. Williams, 402 F. Supp. 2d 508 (D. Del.

---

[4] Typically, "the newest arrival is required to sleep on a mattress on the floor until one of his cellmates is released or moved. That frees a bunk for the inmate who had been on the floor mattress, and any new arrival in that cell would then take his place on the floor mattress. . . . The [floor] mattress can be placed under the lower bunk during the day." See Hubbard v. Taylor, 399 F.3d 150, 154 (3d Cir. 2005).

2005) (finding no constitutional violation where, over the period of five days, an inmate was placed in a cell with two other inmates and forced to eat near the toilet, not allowed to exercise, and did not receive medical care for his mental illness and diabetes).

Since Plaintiff's Complaint is silent as to any alternative bedding arrangements being available to--but not used by--the prison officials, or as to any substandard physical conditions of confinement, and since the Complain does not allege that Plaintiff was singled out for this triple-celling practice, Plaintiff's eleven nights of triple-celling cannot amount to a cruel and unusual punishment.  Indeed, the Court has no reason to conclude that the eleven nights of triple-celling deprived Plaintiff of "the minimal civilized measure of life's necessities," or that prison officials "acted . . . with deliberate indifference to a substantial risk of harm to [Plaintiff's] health or safety." Compare Fuentes v. N.J. Office of the Pub. Defenders, 2006 U.S. Dist. LEXIS 1147 (D.N.J. Jan. 11, 2006) (finding that a violation could possibly be detected where, during the period of three months, the inmates were forced to sleep on thin plastic mattresses on a cold and filthy concrete floor, with poor ventilation and in unsanitary conditions, and these conditions led to spread of infections and disease).  Therefore, Plaintiff's conditions of confinement allegations fail to state a claim upon which relief may be granted.

**C.    Plaintiff's Deprivation of Medical Treatment Claim**

With respect to his deprivation of medical treatment claim, Plaintiff asserts that the MCCI did not provide Plaintiff with medications for his (1) diabetes, (2) acid indigestion, and (3) backache. See Compl. at 4-12.

1.    PLAINTIFF'S DIABETIC CONDITION

With respect to Plaintiff's diabetic condition, Plaintiff alleges that he made requests for diabetes medication on August 20, 2005, see id. at 4, August 21, 2005, see id. at 5, and August 22, 2005.  See id. at 8.  Plaintiff's Complaint acknowledges that Plaintiff did receive medication for his diabetic condition on: (a) August 21, 2005, that is, the next day after Plaintiff made his first request, see id. at 6 ("[Plaintiff] was . . . given a pink pill and was told that is was [diabetes medication]"), (b) on August 23, 2005, see id. at 9 ("[Plaintiff] had a [diabetes medication"), and (c) every day thereafter, see id. at 10 (in the evening of August 23, 2003, "a lady brought [Plaintiff] a 30 day supply of [diabetes medication]").

In addition, during Plaintiff's eleven days at the MCCI, Plaintiff: (a) had his blood sugar checked on four days, (b) was offered to have his blood sugar checked on two *other* days (but refused the test because Plaintiff chose to consume food early on those days and, thus, prevented clear reading of results), and (c) did not have his blood sugar checked on four days (out of the total

of eleven) *after* Plaintiff was supplied with a monthly supply of diabetes medication. See id. at 4-12. Moreover, Plaintiff received two physical check-ups, and met with various members of medical staff to discuss Plaintiff's health issues on seven days out of the entire period of eleven days that Plaintiff spent at the MCCI. See id.

Since the Complaint fails to specify how the above-defined extensive treatment of Plaintiff's diabetic condition by the MCCI amounted to a cruel and unusual punishment in violation of the Eighth Amendment, the Court surmises that Plaintiff complains about (a) Plaintiff's need to wait one day until his first round of medication was delivered, and (b) the one day gap in treatment which occurred on August 22, 2005. However, such minor gaps and/or procrastination in treatment of prisoner's health cannot constitute a cognizable claim unless the prisoner suffers from a condition presenting an imminent threat to the prisoner's life, e.g., a heart attack, a stroke, a serious bleeding wound, etc. See Gatewood v. Hendrick, 368 F.2d 179 (3d Cir. 1966), cert. denied, 386 U.S. 925 (1967) (an inmate is not entitled to relief even if the inmate received "inadequate" medical care but sustained no serious physical injury as result of alleged inadequate care); see also Smith v. Carpenter, 316 F.3d 178 (2d Cir. 2003) (finding no failure to meet inmate's serious medical need where the inmate was not provided with his daily HIV medication resulting in periods of five

and seven days without medication); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (when the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, the focus is on the seriousness of challenged delay or interruption in treatment, and a brief delay does not state a claim).

Plaintiff's Complaint neither asserts that Plaintiff's diabetic condition ever threatened Petitioner's health or life nor indicates that Plaintiff suffered any pain, moreover severe pain, or injury because his diabetic condition remained untreated twice for the period of one day.[5]  See generally, Compl.  Since it does not appear that MCCI's treatment of Plaintiff's diabetic condition deprived Plaintiff of "the minimal civilized measure of life's necessities," or that prison officials "acted . . . with deliberate indifference to a substantial risk of harm to [Plaintiff's] health or safety," Plaintiff's allegations with respect to his diabetic condition fail to state a claim upon which relief may be granted.

---

[5]

It appears that Plaintiff never suffered of any physical pain or severe conditions associated with his diabetes: Plaintiff's "Level II" diabetic conditions were discovered accidently in 2004, after Plaintiff asked a passing-by member of Fort Dix medical staff to check Plaintiff's blood sugar, and the staffer made a guess that Plaintiff was "probably diabetic."  Compl. Pilkey v. Lappin, 05-5314, at 13.

### 2. PLAINTIFF'S ACID INDIGESTION

With respect to his acid indigestion claim, Plaintiff asserts that: (a) on August 20, 2005, he informed the MCCI that he "had been on Zantac [and/or] Ranitidine for 4 years and [he] needed it for the acid indigestion," Compl. at 4; and (b) repeated his request on August 22, 2005. See id. at 8. Plaintiff's Complaint states that, in response to his requests, Plaintiff was given: (a) Mylanta, an acid indigestion medication, on August 22, 2005, (b) Ranitidine on August 23, 2005, and (c) two pills of Ranitidine, to be taken one a day, on August 28, 2005.[6] See id. at 8-10. As a result of not getting the medication on daily basis, Plaintiff suffered the injury of being "kept[] . . . from sleeping" during the night from August 21, 2005, to August 22, 2005. Id. at 8. However, MCCI's inability to supply Plaintiff with more than four daily dosages of anti-acid during the eleven days of Plaintiff's stay at the MCCI neither amounts to deprivation of Plaintiff of "the minimal civilized measure of life's necessities," nor indicates that prison officials "acted . . . with deliberate indifference to a substantial risk of harm to [Plaintiff's] health or safety." See Gatewood v. Hendrick, 368 F.2d 179 (3d Cir. 1966); see also Hasty v. Johnson, 103 Fed. Appx. 816 (5th Cir. 2004) (a mild gastroesophageal reflux disease merely requires "a" treatment

---

[6] It appears that the second pill was taken away during a barrack search by officers having no information about Plaintiff's medical condition. See Compl. at 11.

to satisfy the Eighth Amendment requirements). Therefore, even though Plaintiff's acid reflux caused Plaintiff's one sleepless night, Plaintiff's allegation with respect to his acid indigestion failed to state a claim upon which relief may be granted. See Universal Calvary Church v. City of New York, 2000 U.S. Dist. LEXIS 15153 (S.D.N.Y. Oct. 13, 2000) (the fact that an inmate suffered of insomnia does not state a claim upon which relief may be granted).

3. PLAINTIFF'S BACKACHE

With respect to his backache, Plaintiff asserts that, on August 20, 2005, Plaintiff *notified* a member of MCCI's medical staff that Plaintiff "was on Piroxicam for back pain[. In response, the medical officer] told [Plaintiff] that [Plaintiff] would not get Piroxicam at MCCI [because the medical staff was] not allowed to give out medication like Piroxicam."[7] Compl. at 4-5. From the face of the Complaint, it appears that Plaintiff did not complain of backache at that point. See id. Moreover, although the Complaint repeatedly indicates Plaintiff's disappointment with not

---

[7] Piroxicam is a prescription medication used to relieve the pain, tenderness, inflammation and stiffness caused by arthritis. See <<www.piroxicam.com>>. Piroxicam is a nonsteroidal anti-inflammatory drugs (NSAID) and belongs to the group of "NSAIDs having highest risk of causing ulcers. Switching to alternative pain relievers is the first step in preventing or healing ulcers." See <<http://www.humed.com/humc_ency/patient_education/articles/000034_8.htm>>. Since Plaintiff's Complaint constantly points out Plaintiff's acid reflux disease, the Court is not entirely clear as to why Plaintiff kept insisting of having Piroxicam.

getting Piroxicam during his stay at the MCCI, it appears that Plaintiff neither notified the medical staff about his backache nor requested a medicine to curb his pain during his entire stay at the MCCI except for a single statement that Plaintiff made on August 22, 2005.[8] See id. at 8 ("[Plaintiff] told [a medical official] that [Plaintiff] . .. needed the back pain medication"). The Complaint, however, specifies that  on August 23, 2005, that is, the day following Plaintiff's request for medicine made to the medical staff of the MCCI, Plaintiff was given Tylenol expressly for the purposes of curbing Plaintiff's back pain. See id. at 9.

Since it appears that the MCCI promptly responded to Plaintiff's sole complaint about Plaintiff's backache, this Court has no reason to conclude that the medical staff of the MCCI was indifferent to Plaintiff's requests. Plaintiff's unfulfilled desire for Piroxicam as the sole medicine of Plaintiff's choice (even though Plaintiff was advised twice that Piroxicam was not available at the MCCI, see Compl. at 9), indicates neither that Plaintiff was deprived of "the minimal civilized measure of life's necessities," nor that the prison officials who provided Plaintiff once with Tylenol "acted . . . with deliberate indifference to a substantial risk of harm to [Plaintiff's] health or safety." See

---

[8] The Complaint indicates, although vaguely, that Plaintiff suffered of back pain on August 24, 2005. See id. at 10 ("[Plaintiff] told the C.O. that [Plaintiff] had severe back pains").

Estelle, 429 U.S. at 107; see also White v. Napoleon, 897 F.2d 103 (3d Cir. 1990) (disagreements over medical judgment do not state an Eighth Amendment claim); Coleman v. Crisp, 444 F. Supp. 31 (W.D. Okla. 1977) (disagreements between a patient and his doctor over availability of medication do not state an Eighth Amendment claim). Therefore, Plaintiff's claim with respect to his back pain fails to state a claim upon which relief may be granted.

**D.     Plaintiff's Other Claims**

In addition to the above-discussed matters, Plaintiff's Complaint contains a substantial amount of Plaintiff's general observations, thoughts and rhetorical questions that could be perceived as vaguely stated allegations.[9] For instance, it appears that Plaintiff complains about the fact that MCCI did not provide Plaintiff with the medications previously dispensed to Plaintiff at another correctional facility, the F.C.I. Fort Dix.  See Compl. at 5-6.  Plaintiff also complains that he had to wait about an hour to be seen by a member of MCCI's medical staff while "the medical

---

[9]   See, e.g., Compl. at 6-9, ("[Plaintiff] very politely asked, "[W]hy can't I just see the doctor again[?]"; "[Plaintiff] told [a medical staff member] that [Plaintiff] was going to continue having problems getting medication if [Plaintiff] did not see the doctor"; "[Plaintiff] can not understand why [Plaintiff] can not have Zantac/Ranitidine . . . because this medication is sold over counter"; "This time [Plaintiff's] blood [sugar level tested as] 104. [Plaintiff] ha[s] never been under 119 since [Plaintiff] was told that [he was] a diabetic, but . . . at MCCI the [blood sugar] readings are remarkable"; "[A medical staff member] LEFT AND NEVER CAME BACK! (capitalization in original)).

staff was helping other inmates that came after [Plaintiff]," see id. at 6, or that Plaintiff did not get to see a doctor (and, thus, was attended by a nurse) even though Plaintiff believed that his needs would be addressed speedier had he seen a doctor. See id. 6-7.  In a similar vein, Plaintiff's Complaint notes Plaintiff's (a) disappointments with Plaintiff's inability to examine the container of the medicine that Plaintiff was given (since Plaintiff desired to verify correctness of the prescription), see id. at 6, and (b) his doubts as to whether the medical staff at MCCI actually made a phone call which, according to the medical staff, was made.  See id. at 6.  A substantial portion of the Complaint is dedicated to Plaintiff's expression of frustration with his medical records being misplaced while the medical unit at the MCCI was transferring electronic records into hard copy ones.  See id. at 5-6, 9-11.  Finally, Plaintiff's Complaint indicates Plaintiff's disappointment with some medical staffers being "not caring person[s]," see id. at 9, and with the staff making what Plaintiff considered to be mollifying promises or evasive excuses.  See id. at 9, 11.

None of these disappointments, dissatisfactions or doubts are cognizable under the Eight Amendment. See Catchings v. Marrow, 160 Fed. Appx. 256 (3d Cir. 2005) (refusal to entertain an inmate's demands based on inmate's self-diagnosis or self-prescription do not constitute a violation of the Eighth Amendment); Jones v. Williams, 2001 U.S. Dist. LEXIS 25528 (N.D. Tex. Mar. 19, 2001)

(loss of medical records leading to delay in inmate's treatment does not violate the Eighth Amendment); <u>McNeil v. Redman</u>, 21 F. Supp. 2d 884 (C.D. Ill. 1998) (inmate's inability to see a doctor is not a violation of the Eighth Amendment if the inmate was attended by another member of medical staff).  Since Eighth Amendment prohibition against cruel and unusual punishment does not mandate the medical staff to either feel sympathy to inmates or to report to inmates, or to appease inmate's suspicions, or to entertain inmate's medical choices or whims, the remainder of Plaintiff's Complaint does not state a claim upon which relief may be granted.  <u>See</u> <u>Estelle</u>, 429 U.S. 97; <u>White v. Napoleon</u>, 897 F.2d 103.

## CONCLUSION

For the reasons stated in this Opinion, Plaintiff's application to proceed <u>in forma pauperis</u> is **GRANTED**.  Plaintiff's Complaint is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.  An appropriate Order accompanies this Opinion.

                                ___s/Stanley R. Chesler_____
                                  **STANLEY R. CHESLER**
                                **United States District Judge**

Date: June 27, 2006